GARY F. SINGLETON, Plaintiff v. SUNSET BEACH & TWIN LAKES, INC.,
EDWARD M. GORE, DINAH E. GORE, and TOWN OF SUNSET BEACH, Defendants

No. COA00-1135

(Filed 18 December 2001)

## 1. Highways and Streets— entitlement to strip of land—public dedication—summary judgment

The trial court erred in a declaratory judgment action by granting summary judgment in favor of defendants on the issue of whether plaintiff is legally entitled to the use of a certain strip of land based on the determination of the proper width of the pertinent street, because: (1) the record discloses the existence of genuine issues of material fact regarding whether defendant town has taken action that constitutes an acceptance of defendant individuals' offer of public dedication of the pertinent strip of land on the 1965 map; (2) plaintiff's deed has not been included in the record, making it impossible to determine whether plaintiff purchased his lot pursuant to a deed that referenced a particular map or plat, and if so, which map or plat; (3) there is an absence of information in the record regarding the location of the street as depicted on the 1965 map as compared to the location of the street as it currently exists; and (4) the record is unclear as to whether some or all of the street has ever been submerged by water.

## 2. Declaratory Judgments— proper party—controversy between every party not required

The trial court erred in a declaratory judgment action by granting a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) in favor of defendant town on the issue of whether plaintiff is legally entitled to the use of a certain strip of land based on the determination of the proper width of the pertinent street, because: (1) it is not necessary under the Declaratory Judgment Act that there be a controversy between every party in the action, and plaintiff has set forth a real and justiciable controversy between himself and defendant individuals; and (2) any declaration as to whether defendant town accepted defendant individuals' offer of dedication of the pertinent street as depicted in the 1965 map will affect defendant town's interest, making the town a proper party to the declaratory judgment action.

**SINGLETON v. SUNSET BEACH & TWIN LAKES, INC.**

[147 N.C. App. 736 (2001)]

Appeal by plaintiff from orders entered 8 May 2000 and 16 May 2000 by Judge D. Jack Hooks, Jr. in Brunswick County Superior Court. Heard in the Court of Appeals 22 August 2001.

*Rudolf, Maher, Widenhouse & Fialko, by M. Gordon Widenhouse, Jr.; and Laura S. Jenkins, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr. and Robert R. Marcus; Baxley & Trest, by Roy D. Trest, for defendant-appellees Sunset Beach & Twin Lakes, Inc., Edward M. Gore and Dinah E. Gore.*

*Fairley, Jess, Isenberg & Green, by Michael R. Isenberg and Laura E. Thompson, for defendant-appellee Town of Sunset Beach.*

HUNTER, Judge.

North Shore Drive is a street located on the island of Sunset Beach in Brunswick County, North Carolina. On 14 February 2000, Gary F. Singleton ("plaintiff"), owner of a lot abutting on North Shore Drive, filed a complaint seeking a declaratory judgment as to the proper width of the street. On 8 May 2000, the trial court entered an order granting a motion to dismiss in favor of defendant Town of Sunset Beach ("the Town") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (1999). On 16 May 2000, the trial court entered a second order denying plaintiff's motion for summary judgment and granting summary judgment in favor of defendants Sunset Beach & Twin Lakes, Inc., Edward M. Gore (president of the corporation), and Mr. Gore's wife Dinah E. Gore (collectively "the Gores"). Plaintiff appeals from these orders. We affirm in part, reverse in part and remand.

The parties on appeal have generally construed this case as a dispute over the proper width of North Shore Drive. However, this case is actually a dispute over whether plaintiff is legally entitled to the use of a certain strip of land designated as North Shore Drive on a map of the eastern end of Sunset Beach filed in 1965. True, the map filed in 1965 depicts North Shore Drive as a street with a width of sixty feet; and, apparently, North Shore Drive as it is currently constructed (or at least as it has been depicted in subsequent maps) is only thirty feet in width. However, in fact, there is no single "North Shore Drive," the width of which is to be declared by the court. Rather, there are at least two mapped versions of North Shore Drive (if not more), and the question is whether plaintiff is entitled by law

to the use of the sixty-foot strip of land, or a portion thereof, designated as North Shore Drive on the 1965 map.

The record tends to establish the following pertinent facts. In the 1950's, the Gores began to develop the island of Sunset Beach. On 21 July 1965, a map ("the 1965 map") was recorded at Book 8, Page 7, in the Brunswick County Registry, showing a survey of the eastern end of the island. The 1965 map depicts North Shore Drive as running generally east-west, with a width of sixty feet.

On 6 August 1965, the Gores conveyed to James Bowen ("Bowen") a large parcel of land adjacent to North Shore Drive ("the Bowen property"). This conveyance was made pursuant to a deed dated 22 July 1965 ("the Bowen deed") which was recorded at Book 184, Page 452, and which expressly references the 1965 map.

According to an affidavit from Mr. Gore, submitted in support of the Gores' motion for summary judgment, the 1965 map shows only the "proposed development" of the island. At that time, according to Mr. Gore, "the area known as North Shore Drive had not [yet] been established and opened on the ground." Subsequently, according to Mr. Gore's affidavit, a body of water known as Tubbs Inlet gradually migrated westward over a number of years until, by 1969, it covered a portion of the eastern end of the island. In May of 1969, the Gores allegedly began to reclaim, by dredge and fill, portions of the island that had been submerged by water. According to Mr. Gore's affidavit, this "reclamation project" was completed in February of 1970, and the reclaimed portion of the island was then re-subdivided and re-platted.

On 12 June 1975, the Town Council adopted a resolution expressing its intent to permanently close and relocate the portion of North Shore Drive (as depicted on the 1965 map) between Cobia Street and Sixteenth Street. This portion does not include the portion of North Shore Drive between Sixteenth Street and the water on which plaintiff's lot currently abuts. The stated purpose for relocating this portion of North Shore Drive was to allow for the "proper use of the abutting property and for the safe location of the street with reference to the waterline just North of this portion of the street." This resolution was unanimously adopted by the town at a public hearing on 11 July 1975, held pursuant to N.C. Gen. Stat. § 160A-299 (1999). The relocation was apparently not undertaken until sometime later.

On 13 September 1976, a map ("the 1976 Bowen Map") was recorded at Book H, Page 356, which illustrates the division of the

Bowen Property into lots, and which (like the 1965 map) shows North Shore Drive to be sixty feet in width. Later on the same day, another map ("the 1976 Gore Map") was recorded at Book H, Page 358, which illustrates the division of a large tract of property owned by the Gores into lots, and which (contrary to the 1965 map) depicts the entire length of North Shore Drive to be thirty feet in width. On 7 December 1977, a map ("the 1977 Bowen Map") was recorded at Book I, Page 379, which shows the addition of cul-de-sacs to the ends of Sixteenth, Seventeenth, Eighteenth, and Nineteenth Streets, and which, again, depicts North Shore Drive as sixty feet in width.

Either in 1986, or at some point in time thereafter, plaintiff purchased lot twenty-five from Bowen ("plaintiff's lot"). However, the deed for this conveyance has not been included in the record. Finally, on 22 December 1999, the Gores recorded a "Withdrawal of Street from Dedication" at Book 1349, Page 1112. This document purports to withdraw the offer of dedication of North Shore Drive as depicted in the 1965 map, pursuant to N.C. Gen. Stat. § 136-96 (1999).

It is not clear from the record whether the 1976 Gore Map is consistent with the way in which the eastern end of the island is currently constructed. According to this map, North Shore Drive, running generally east-west, begins at Cobia Street at its western end, and runs east to the water at its eastern end. Sixteenth Street, which runs north-south, crosses North Shore Drive at a point approximately halfway between Cobia Street and the water. Plaintiff's lot abuts on North Shore Drive at a point between Sixteenth Street and the water. In addition, it is undisputed that Sunset Beach & Twin Lakes, Inc., Edward M. Gore and Dinah E. Gore currently own all lots abutting on the north and south sides of North Shore Drive between Cobia and Sixteenth Streets.

The parties dispute whether the portion of North Shore Drive between Sixteenth Street and the water (on which plaintiff's lot abuts) has ever been moved or relocated from where it is depicted on the 1965 map. In fact, the parties dispute whether North Shore Drive, as it appears on the 1965 map, has ever been opened or used at all. In his affidavit, Mr. Gore contends that the actual physical location on the face of the earth of North Shore Drive as it currently exists is different than the strip of land designated as North Shore Drive on the 1965 map. However, according to plaintiff's affidavit, submitted in support of his motion for summary judgment, the location of the por-

tion of North Shore Drive between Sixteenth Street and the water was not affected by the dredge and fill in 1969, and that portion has "been opened and used continuously since . . . 1974."

"Appellate review of a grant of summary judgment is limited to two questions: (1) Whether there is a genuine question of material fact; and (2) whether the moving party is entitled to judgment as a matter of law." *Gregorino v. Charlotte-Mecklenburg Hospital Authority*, 121 N.C. App. 593, 595, 468 S.E.2d 432, 433 (1996). "A motion for summary judgment should be granted if, and only if, 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . .' " *Wooten v. Town of Topsail Beach*, 127 N.C. App. 739, 740, 493 S.E.2d 285, 286-87 (1997) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990)), *disc. review denied*, 348 N.C. 78, 505 S.E.2d 888 (1998).

[1] Plaintiff has articulated two theories in support of his claim that he is entitled to the use and enjoyment of the sixty-foot-wide strip of land designated as North Shore Drive on the 1965 map. First, plaintiff contends that he is entitled to an individual easement by estoppel over this strip of land. Second, plaintiff contends that the Gores made an offer of public dedication of this strip of land, and that this offer of dedication has been accepted by the Town. Based upon the incomplete record before us, which contains numerous genuine issues of material fact, we are unable to conclude that either plaintiff or the Gores are entitled to judgment as a matter of law.

First, the record discloses the existence of genuine issues of material fact regarding whether the Town has taken action that constitutes an acceptance of the Gores' offer of public dedication of the strip of land depicted as North Shore Drive on the 1965 map. For example, the evidence as to whether the Town has used and maintained North Shore Drive as it appears on the 1965 map, as noted above, is conflicting. Whether there has been an acceptance of the offer of dedication is significant because the purported withdrawal by the Gores in 1999 of the strip of land designated as North Shore Drive on the 1965 map would be ineffective as a matter of law if, prior to that time, the Town had accepted the offer of public dedication. *See* N.C. Gen. Stat. § 136-96.

We also note that plaintiff's deed has not been included in the record. As a result, we are unable to determine whether plaintiff purchased his lot from Bowen pursuant to a deed that referenced a par-

ticular map or plat, and if so, which map or plat.[1] There is also a striking absence of information in the record regarding the location on the face of the earth of North Shore Drive as depicted in the 1965 map as compared to the location on the face of the earth of North Shore Drive as it currently exists (or as depicted in the 1976 Gore map). This is significant because it may bear upon whether North Shore Drive as depicted in the 1965 map is necessary for convenient ingress to and egress from plaintiff's lot; which, in turn, may have an impact upon the Gores' right to withdraw North Shore Drive as depicted on the 1965 map pursuant to N.C. Gen. Stat. § 136-96. Finally, the record is also unclear as to whether some or all of North Shore Drive has ever been submerged by water, and, as a result, we are unable to determine what effect, if any, this might have on the rights of the parties. *See, e.g., Ward v. Sunset Beach & Twin Lakes, Inc.*, 53 N.C. App. 59, 279 S.E.2d 889 (1981).

[2] However, we are able to address plaintiff's argument that the trial court erred in granting the Town's motion to dismiss. The Town moved to dismiss pursuant to Rule 12(b)(6). In general, a Rule 12(b)(6) motion to dismiss "challenges whether a complaint states a legally sufficient cause of action." *Perry v. Carolina Builders Corp.*, 128 N.C. App. 143, 146, 493 S.E.2d 814, 816 (1997). For a court to have jurisdiction under the Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 to -267 (1999), the plaintiff must allege in his complaint that a real and justiciable controversy, arising out of opposing contentions as to respective legal rights and liabilities, exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure. *See Town of Spencer v. Town of East Spencer*, 351 N.C. 124, 127, 522 S.E.2d 297, 300 (1999). Further, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." N.C. Gen. Stat. § 1-260.

The Town argues that its motion to dismiss was properly granted because plaintiff has not alleged a controversy between himself and the Town. However, it is not necessary under the Declaratory Judgment Act that there exist a controversy between each and every party to the action. Here, plaintiff has set forth a real and justiciable

1. Plaintiff's complaint alleges that he purchased his lot pursuant to a deed that references the 1976 Bowen Map, but the complaint is not verified; further, plaintiff's affidavit does not state that he purchased pursuant to a deed that references the 1976 Bowen Map.

controversy between himself and the Gores, thereby establishing jurisdiction under the Declaratory Judgment Act over the issues raised in the complaint. The complaint seeks, in part, a declaration as to whether the Town accepted the Gores' offer of dedication of North Shore Drive as depicted in the 1965 map. Any declaration regarding whether the Town has accepted the offer of dedication of North Shore Drive as depicted on the 1965 map will affect the Town's interest. Therefore, although the Town does not dispute plaintiff's allegations, and may in fact benefit from a declaration in plaintiff's favor, the Town is still a proper party to this declaratory action because its interests will be affected by the outcome. Thus, the Town's Rule 12(b)(6) motion to dismiss should have been denied.

In summary, we reverse the grant of the Town's motion to dismiss and hold that the Town is a proper party in this declaratory action. Further, we affirm the denial of plaintiff's motion for summary judgment but we reverse the grant of the Gores' motion for summary judgment because of the existence of genuine issues of material fact, and we remand for further proceedings.

Affirmed in part, reversed in part and remanded.

Judges WYNN and TYSON concur.